Case is number 19-1256, Kingston Technology Company v. SPEX Technologies, Inc., Mr. Hoffman. Yes, Your Honor. Go ahead. May it please the Court, Your Honors. Looking first to Claim 55, I think the first question in this appeal is whether a patent owner can admit that a claim limitation was taught by industry standard and in its specification rely on that standard and yet argue that the disclosure of the same standard in the prior art is insufficient to meet the limitation. Essentially, is what is good for the goose on enablement also good for the game there on invalidity? We think that it must be. We think that the Board erred in requiring more detail from the petitioners than was set forth in the supporting specification. I think you can see this most clearly in some sense on page 24 of the red brief. On page 24, the patent owner concedes, I'm quoting, one of ordinary skill in the art seeking to practice the invention of Claim 55 with a PCMCA card would know without undue experimentation that specific features described in the PCMCA standard must, and they bolded and italicized that, be implemented in order to practice the claim receiving and providing steps. This is true even if those features are optional, i.e. not mandatory under the PCMCA standard. The feature we're talking about here was optional, right? I don't believe it was, Your Honor. Now, the features are... Well, didn't the Board find that it was optional? I don't believe the Board found that the features cited were optional. The Board's holding on that one section that said may was one small part of the card insertion process that is part of the PCMCA standard. Yeah, but isn't it the relevant part of the process? I mean, the receiving a request and providing the type response was an optional feature of the standard, no? I don't believe it was, Your Honor. Didn't the Board find that that particular feature was optional? Your Honor, I think the Board identified some languages as may. But if you look at the Board's language when they cite, what they cite is that is a small portion of the card insertion process. The card insertion process, which is the event, is not optional. Well, sure, but we're talking about a particular part of it here and whether that particular part is optional or not. But that, Your Honor, to be clear, that particular part is not the only part that discloses the claim limitations. That particular part is, if you look at what they say, this is on Appendix 29 from the Board's decision. They quote this language, card services clients may need to process a PC card interface structure, CIS, to determine if and how they will interact with a card detected in a socket. And then it says open print. Some clients may receive all the information they require from the card insertion event. The card insertion event also has the same process of sending, getting the information and receiving it. It's just for some clients, there may be a need for an additional step in receiving, filling out that information, getting a little more. But that feature, first of all, is not optional. It is part of the standard such that if a client is inserted that doesn't get enough information. Where does Jones refer to the part of the standard that you say is mandatory and that discloses this limitation? Jones does not have a specific site to this section of the specification. However... And it's a different specification, isn't it? I don't believe it was, Your Honor. The Board got confused there and this never came up during the hearing where we were able to clarify for them. If you look at the standard, it is composed of a variety of different documents that are up-revved at slightly different times but all published together. And if I can, I'll find the site for you, Your Honor. Do you agree, though, that they have different names? I mean, Jones references the PC card standard specification. Whereas what's being relied on is the PCM CIA card services specification. They have different names, right? They have different names, Your Honor, but they're all part of the same standard. If you look at appendix... I understand it's part of the same standard, but that standard might have multiple specifications. It appears that it does, right? The standard that was expressly referenced by Jones is not the same one that's being relied on here, right? They're all published together, Your Honor. They're all part of the same PCM CIA standard. It's a collection of documents. But they refer to one of those multiple documents. And Jones refers to one of those multiple documents, right? It does, Your Honor, but they're published together. And then you're citing a different one of those documents, right? Your Honor, they're published together and they intersect. So while we're citing to one of them... We just did yesterday. We are, Your Honor. We are citing to a different... I'm having these work different because these are a package of specifications that all come together and to one of the skill and the art would... Are published together and refer to each other. So what part of Jones do you rely on is incorporating this mandatory part of the standard? If you look at appendix 314, it's Jones, Your Honor, and there is... In paragraph starting at line 15, there is a reference directly to the... President Bodyman's invention conforms to the piece... Wait, wait, wait. Sorry, Your Honor. 314. Okay. You're referring to the President Bodyman conforms to the PC card standard specification release 2.01, right? Yes, Your Honor. That line... It's the same as we had before, Your Honor. If you think you can look at appendix 1560, those documents are all... To one of skill and the art or collective. But importantly, it's not simply that it references the PCMSA standard. It is that... In the particular version, it is that this level of detail that's provided with regard to the PCMSA standard in Jones is the same level of detail that is provided in the specification of the 135 patent to support these limitations. So that if you look at, for example, lines 24 through 30, the functionality that we've all been talking about, the attribute memory, these features are part of the standard that we cited. The send and receive process that is operational through the hardware and software PCMSA interface is in that section. And as we identified and we explained in our opening brief, that is the... They track exactly what the patent owner relies on to support these limitations and indeed relies on for enablement to support these limitations. So without... It's the exact same level of disclosure. If that disclosure is sufficient to support the claims, then it should be sufficient to... In the same disclosure in Jones, it should be sufficient to support the prior art. And importantly, the board never says that's wrong. The board jumps directly in its opinion. And if you look at Appendix 27, the board simply... After recounting what happened earlier... This is their final decision, Appendix 27. After recounting what happened in the institution decision, and then recounting the parties' positions, the board never says that they adopted their earlier reasoning or that they adopted either party's position. The board simply declares that because Jones does not expressly disclose the receiving and providing steps of Claim 55, they had to go to inherency. There's no explanation from the board why they had to go to inherency. And any of these issues that have with what the... Sorry, Your Honor. It's anticipation, right? It is anticipation, Your Honor. So your view is that you can use enablement to infer that there's limitations here, but you don't have to rely on inherency to show that those limitations are necessarily present. I think, and we cite, Your Honor, Ingray-Greaves, the basic concept of you can rely on what one of skill in the art would know. And we have a very unusual situation here in that there really is no doubt the two limitations that we are discussing are in the prior art. The section I read before from page 24 of their brief, these are things that were known to one of skill in the art and known to one of skill in the art in this exact PC card technology. I think one of the things the board's decision reflects is the idea that maybe it would have been obvious. Maybe one of ordinary skill in the art would have said, this would be one of many ways in order to identify what the card is. But that's not the ground that was asserted. What was asserted was anticipation, which requires that every limitation be satisfied, right? Correct, Your Honor. So, you know, I think that the board's decision is recognizing that those limitations have to be taught or be necessarily present under inherency. Do you disagree with that? I disagree with that, Your Honor, because I think they are taught. I think that when you have a reference to the PCMC standard, in this case we have the fact that everyone admits, and the board doesn't dispute, that one of skill in the art would know that these elements were part of the PCMC standard. They were within a person's ordinary skills knowledge in the PC card art. That's not a disputed fact. And having known that, that they're admitted to being the prior art, the person would have those elements. So you wouldn't, you wouldn't, there is anticipation, because all of the elements that are part of the claim are there between this knowledge versus skill in the art and what's disclosed. Put another way, I think that the board here, I mean, the patent owner here started with the prior art standard. And to that standard, they added additional security features. Those security features the board found were all in the prior art. That's not contested here. So what we're left with is the point of novelty the board found is the prior art card that the patent owner started with. So everything that was supposedly added to that card to make it novel has been knocked out. And the only thing left is where they started, which wasn't novel. My time is going a little bit. We do think they used the wrong standard for inherency, though, Your Honor. Importantly, if you're going to analyze an inherency, the claim limitations, I mean, the PCMCA standard is inherent in the reference. It requires it. It says the PCMCA standard is part of it. It's necessarily part of a PCMCA card. The board's argument, its rationale here was one of just speculation. In fact, the board even says that. We submitted all the relevant sections of the standard. The board says there may have been other pages we didn't submit. Specs had them all, every page. If there had been anything that was different, they have the standard as well as we do from the litigation. They're just speculating. Can I move you on to Claim 57 and just ask you one question? Sure, Your Honor. What do you think the standard of review is for the board's determination of the scope of a petition and then determination of whether an argument raised is a new argument not in the petition? What is our standard of review that applies? I think you can review that de novo, Your Honor, because it's simply the language of the petition, which you as well as the board can... But isn't it like we have multiple cases that say that when we are looking at the board's determination of whether something was waived or not, that we review that for an abuse of discretion. Your Honor, but this is not a situation where the board is applying any of its, I would say, specialized knowledge or there's a factual determination we made here. It is undeniable what the specification says. I mean, sorry, what the petition said. The board simply and for whatever reason doesn't address it. Let me just back up. Even if there's an abuse of... Even when we review for an abuse of discretion, if there's a legal error, that can be an abuse of discretion. If there's a factual error, clearly erroneous fact-finding, that can be reviewed for an abuse of discretion, right? I mean, that is an abuse of discretion. It would be, Your Honor. I'm wondering what's your authority for saying that we review the board's determinations of whether there's waiver or not de novo. Do you have any case law to support that? I don't have one. I don't have one, no, Your Honor. I don't believe we cited any case law for that particular proposition. But I think even under an abuse of discretion standard, if you look at what was cited in the petition, what you see is that we cited, for example, this is on Appendix 1882, that what we cited was data transfers and operations with memory card 100 in between the card and the host computer. So data transfers with a memory card. What the board said is that we... Did you just say 1825 you're looking at? 1822, Your Honor. But that's not even the right limitation, right? Well, there's two limitations at issue, so it could also... The next limitation is 1825 to 1826, Your Honor. Right. You're relying on the fact that you referenced data storage 150 to mean that you were referring to storing. Yes, but also if you look at 1825, there's a section there where it says, at the bottom of 1825, the defined interaction, open paren, i.e., the transfer of data between the host computer and the data storage 150 is affected. Yeah, but if that's talking about transfer of data, communication, it's not talking about storing. The best you've got, I think, here is that it does refer to data storage 150, and so you would infer from that because it's storage that you meant storing as being the defined interaction. I don't think it's an inference, Your Honor. There's no requirement for an IFSIS verbose test. If you transfer data to storage, you are storing it. There's nothing else in transferring data to storage than storing the data. What about above where you say it's on the prior page, 1824, where you say the defined interaction here very clearly is the exchange of data between the host computer and the target module memory. You're talking about the exchange of data, not the storing of data. Yes, Your Honor, but that's actually a reference to the patent in suit, not to the prior art. If you look at that paragraph, the 135 patent describes security operations performed on exchange data, and then there's a reference to exhibit 1301. You're saying that the transfer of data is the same as storing the data. The transfer of data to memory, Your Honor, is the same as storing it because if you transfer it to memory, you're putting it in the memory. I mean, looking back at it now, yeah, I wish I'd said storage, but that word wasn't the word that was being used the time we submitted the petition. That was a word that came out during the case that the board started using. But the transfer of data to memory, that is the definition of what storage is because it doesn't just hang out in a spot outside of the memory. It's the transfer to memory. And I have a question for you. Even if you're in the above paragraph on page 12, 1824, even if you're referring to the 135 patent there when you say the defined interaction is the exchange of data, what does it matter? I mean, you're still saying that you think that the claim is requiring the exchange of data, you know, between the host and the target to satisfy the claim limitation, right? I don't think we're there. We're just describing what the 135 patent describes. When we describe whether the prior meets the claim limitation, that's later on, on 1825, where we talk about the transfer. Maybe we could have more artfully described what the 135 patent teaches. I mean, exchange of data is still- What's the difference between exchange and transfer anyway? I'm sorry, Your Honor. What is the difference between exchange and transfer? I think I would think transfer would be one directional and exchange would be two transfers both ways. I think transfer- What if it says transfer of data between? Wasn't that two-way? I don't know your honor on some of these terms. I think that it's, whether it's two-way or not, as long as data is moving from the host to the memory, you are storing data, which is what the board found the definer action to be and what, in the litigation, the specs has argued meets that claim limitation. I'm way over time here, so just really quickly. We do think there's a fundamental problem in the fact that- I think we're out of time. We'll give you two minutes for rebuttal. May it please the court. The board allowed Kingston to submit- that the defined interaction was the transfer of data from the host to memory. Why isn't that talking about storing it in memory? Well, I don't think, I think as the board found, an issue with what Kingston did in its mapping of Claim 57 is mapping the same disclosure in Jones to two different separate distinct limitations, the communicating and the performing steps. Well, not really, because the performing step requires a security operation, which is not the same thing as the communicating step. Well, it's performing the defined interaction on the exchange data. That's right. I mean, what I'm saying is the performing step is going to be different from the communication step, even if you both, if you consider that the transfer of data to storage satisfies the communicating step and the other part of the performing step. I agree with that, Your Honor, in that they are distinct steps. And that was actually the issue that the board had with Kingston's mapping to Claim 57, that they were mapping the same aspect of Jones to both- It sounded to me as though what they were saying was that storing and the transfer of data to storage are two different things. I'm sorry, that transfer of data and storage are two different things? Correct, which seems to me to be pretty technical weeding of what the argument is. That's not how I understand the institution decision. But how do you understand the petition? So what we're doing here is we're trying to figure out if the board erred in reading the petition the way it did. So looking at the petition, why is it that the language transfer of data between the host computer and the data storage isn't referring to storing? Well, I think because the only mention, as the board found, the only mention of the word storage in the discussion of the steps in the petition, it's a parenthetical statement that identifies those physical components. Maybe the use of the word is only in the parenthetical, but the description of what's happening is a description of storage, transferring data from the host to memory. That's storage, isn't it? We don't agree with that interpretation. Why not? The transfer of data, in theory, it could involve storage, but what the board found, and we of course need to give deference to their factual findings, the board found that Kingston was improperly mapping this element to, I'm sorry, this same disclosure to the transfer of data to both the communicating and performing steps. Right. They're saying that the transfer of data from host to storage satisfies both of those limitations, but that's not the same as saying the communicating and the performing steps are the same, since the performing step has this additional feature to it of performing a security operation. They're saying that the, I'm sorry, could you say that again, Your Honor? So, it may be that the transfer of data from host to memory satisfies both the communicating limitation and the defined interaction, but that doesn't mean that the two limitations are the same, because the communicating step requires transfer of data, but the performing step also requires performing a security operation. Yes, the limitations are distinct, and the performing step does have that additional requirement. I think what the board concluded is that Kingston's mapping did not satisfy, did not provide sufficient evidence that both were met. Can I ask a question? Has anyone disputed, either you or your adversary, challenged or appealed the board's reasoning that the same disclosure cannot meet these two claim limitations? No, Your Honor, I don't believe so. I don't believe so either. I also, if I may, want to make sure I address... This sounds as though what the board is saying is that transferring data to storage is somehow different from storing. That seems like a kind of hyper-technical interpretation of this. Well, I'm... Isn't it true that transferring data to storage means storing? In the context of the 135 patent, I'm not sure, Your Honor, but I think what we need to be clear about is that the board made its factual finding and that it needs to be given deference. But we have the documents here, and we have some obligation to see whether their view that this was a new argument is hyper-technical. They've had a bit of a tendency to do that. I don't know whether you're familiar with our recent decision in Chamberlain. There are going to be tweaking of arguments, sometimes a little bit different language. And the fact that there's a change in that respect between the petition and later articulations of the theory doesn't mean it's not the same theory. I mean, we constantly have the same set of problems in connection with reviewing district courts where people tweak their argument from the district court up here. And there's got to be some room for tweaking. And it seems as though here, there hasn't been a basic change in the argument. They argued that this aspect of the performing step was satisfied by the transfer of data to storage, and now they're saying it's satisfied by storage. Those seem to be basically the same thing. And for the board to be saying, oh, no, they're so different that you're barred from articulating it differently seems wrong, no? Well, Your Honor, we agree with the board that this was a new invalidity theory for the reasons... Why is it a new invalidity theory if the only difference is they've now characterized transfer of data to storage as stored? Well, I think we fleshed this out a bit in our patent owner's response to the supplemental brief. But, you know, I think the fact of the matter is the board made a call as to whether this was a new invalidity theory. And I disagree with it. But we want to know why. Like, you keep on referring to the board's finding as if we're not supposed to look behind it. We are supposed to look at whether it's reasonable, whether it's supported by substantial evidence, right? So why is their view of the language, the transfer of data between the host computer and the data storage, they view that as just being transferring information, not storing? Why is that reasonable? Why is it supported by substantial evidence? That's the question. Well, I think it's not necessarily the case that if data is transferred between a data storage and a host, that necessarily there is storage taking place. It could be reading, for example, if it were transferring out, as one example. Normally, that would be what you'd mean by transferring data to storage. It normally means you're storing it, right? If the direction we're talking about is from a host device to a data storage, if the direction is the other direction, then that wouldn't be the case, right? Okay, but what about it says between? It says the transfer of data between the host computer and the data storage. So you're saying that's one-way communication? No, not necessarily, Your Honor. I think it's unclear exactly which direction the transfer would take place. Let's assume that we read it as referring to transfer of data from the host to memory. Let's assume that that's what we understand it to be. Isn't that the same thing as storage? If a host transfers data to a memory and stores it, that is storage. I agree with you. You said and stores it. That wasn't the question. The question was whether transferring data to the memory includes storage, means storage. I'm not sure if the Board had something else in mind that the data could be done. I'm not aware of. I can't articulate anything to you right now as to what the data storage would do besides store the data. The transfer of data from the host to memory is normally the way you describe storage, right? Yes, I agree with that, Your Honor. And I also just wanted to clarify that I disagree with Mr. Hoffman that de novo review applies to this determination on claim 57. I think it's more appropriate to apply an abusive discretion standard because the Board was applying its procedures in holding the petitioner to its petition and the theories therein. I also want to address the argument about Jones anticipating because it mirrors the enabling disclosure of the 135 specification. This argument is based on an improper comparison, we believe, and it's factually wrong. Kingston is conflating the enablement standard with the anticipation standard. Those are different inquiries subject to different legal standards. And, of course, enablement was not at issue in the IPR and is not at issue here. Kingston says that specs admitted in its brief that a bare reference to the PCMCIA standard in the 135 patent was sufficient to enable the claim receiving and providing steps. We never said that. We disagree with that. As one example of the distinction between these disclosures, we pointed to claim 55, the language there, because that's a very clear distinction. We pointed out that the specification and the mandatory language of claim 55, which requires receiving and providing, make clear to a person of ordinary skill what features within PCMCIA would need to be implemented in order to practice those steps. And that's true even if those features are considered optional in the standard. Kingston also argued, I wanted to clarify, that the board did not adopt the board's prior rationale on automatically identifying in its final written decision. We disagree with that. Kingston, I'm sorry, in reality, the board actually repeated the exact same discussion that it had in the institution decision about automatically identifying. It never said it was persuaded by Kingston that the word automatically was unimportant. And at Appendix 27, the final written decision expressly linked Jones's disclosure of automatically identifying to the lack of evidence showing that Jones's memory card necessarily functions with the receiving and providing steps. And so that's all in one sentence, automatically identifying, linked specifically to the receiving and providing steps in the final written decision. We don't agree at all that that was not carried into the final written decision. As to inherency, Your Honor, I won't belabor the point, but I agree that there's an issue of the linkage between what Jones expressly points to, which is a different document than the one that actually contains the commands that they use to map to the receiving and providing steps. But in addition to that, the fact of the matter is that the board found, made a factual determination that those commands were not necessarily required. Picking up from the quotation that Mr. Hoffman read, the one that included the word may in it a couple of times, the very next sentence, Your Honors, says that the complete quotation suggests that the described functions that follow, including later in the same paragraph, the use of the get tuple data command relied upon by petitioner are not necessarily required. That is a factual determination that Kingston has not shown that these commands are required and therefore there cannot be inherency. I also just wanted to address very briefly the alleged admissions of Spetz's litigation expert. At, you know, there's a dispute in the briefs that you see, obviously, about whether the board considered those admissions. And I think the answer is clear that the board very clearly considered those admissions. At Appendix 14, the board explicitly said it considered Kingston supplemental briefing and evidence that included those admissions. The final written decision cited every single one of the pieces of testimony that Kingston had identified that summarized in the red brief on page 34. And Dr. Ryan's testimony was repeatedly discussed during the oral hearing, including at Appendix 1741, 1769 to 70, 1772 and 1787. The board did not ignore or dismiss those alleged admissions. They were fully considered. They just weren't found persuasive. And there's no challenge to their admissibility here. All of that is admissible evidence and nobody argues otherwise. That's that's correct. Yes, that is entered into the record. I think we're out of time. Thank you, Mr. Thank you. Mr. Hoffman, you have two minutes. Be quick, your honors, and I'd like to start where my colleague ended. As we set forth in the brief, we do think there's an APA violation with regard to Dr. Ryan's admissions. We did that. They were not addressed in any substantive way. I'm looking to to alter tech and sign in the brief. The board is required to provide a satisfactory explanation for its actions. A deposition happened after the filing of the petition in the course of the litigation directly applies to all the questions that you were asking, your honor. What one of skill in the art? What does prior know about PCMCA and about the standard? And yet the board does listed in the evidence. But despite it being four pages of a 10 page supplemental brief, we were given and allowing us to submit all this evidence into the record and argue at the hearing. The board is completely silent in the decision about why the experts. Testimony about the fact that those two limitations, 55 A and B, which he says were known in the art. They never address why that is not in any way persuasive to the questions here. They just they essentially just ignore it. And we believe that's an APA violation. It's not as specs asserts a minor item. It's not a single line throwaway. It was a major point of briefing and a major point of argument that is just simply not addressed by any substance. And then lastly, I believe you always have it with regard to 57. What we're reading from the competition is by definition, not a new ground, not a new, not a new argument, not a new theory. Discretion is not a whim. Has to be some rational basis for it. And we believe that the board doesn't provide one and specs didn't provide one. And it's briefing or its argument. Okay. Thank you. Thank you. This is submitted. Thank both council.